### PACIFIC S. S. CO. v. STATE OF WASHINGTON.

(Circuit Court of Appeals, Ninth Circuit. November 20, 1922.)

#### No. 3870.

Shipping ⬒112—Intermediate carrier held not liable for loss of goods by connecting carrier.

An intermediate ocean carrier, under a through bill of lading from Los Angeles to Olympia, Wash., *held* within its rights in transshipping the goods at Seattle, which was the customary end of its route, though its vessels sometimes went as far as Tacoma, and not liable for loss of the goods by sinking of the vessel of the connecting line.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in admiralty by the State of Washington against the Pacific Steamship Company. Decree for the State of Washington, and respondent appeals. Reversed and remanded.

B. S. Grosscup, W. C. Morrow, and Chas. A. Wallace, all of Tacoma, Wash., for appellant.

L. L. Thompson, Atty. Gen., and Nat U. Brown, of Olympia, Wash., for the State of Washington.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, District Judge.

---
⬒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GILBERT, Circuit Judge. The appellee purchased at Los Angeles 250 boxes of automobile license plates, which on December 24, 1918, were delivered to the Southern Pacific Company, to be transported from Los Angeles to Olympia, Wash. The Southern Pacific Company issued its through bill of lading, and it carried the plates to Wilmington, Cal., where it delivered the same to the appellant, a common carrier operating a line of steamers between Wilmington, Cal., and Seattle, Wash., and occasionally including other Puget Sound ports. The appellant advanced to the Southern Pacific Company the earned freight and took the plates on board its steamer, the Admiral Farragut, and carried the same thereon to the port of Seattle, where it turned them over to the Merchants' Transportation Company, a connecting common carrier, which took the same on board its vessel, the Amazon, to be transported to Tacoma, where they were to be transferred to another carrier by water, to be taken to Olympia.

While on her way to Tacoma, the Amazon was capsized and a portion of the plates were lost and the remainder thereof were damaged. The appellee brought a libel in personam to recover the value of the lost plates and the expense of reconditioning the rescued plates. The Merchants' Transportation Company answered the libel and filed its petition for limitation of liability. The appellee received from the proceeds of the salvage and freight of the Amazon $1,640, and thereafter continued its action against the appellant and obtained a decree in the sum of $997.48. From that decree the appeal is taken.

The appellee does not assert that the appellant was under obligation to carry the goods to Olympia, their ultimate destination, or that the appellant would have been liable in case of their loss while being carried from Tacoma to Olympia; but it contends that the appellant bound itself to carry the goods as far as Tacoma, and that the transfer at Seattle to another carrier was an unauthorized deviation. It was the appellant's duty to transport the goods to the end of its route. The question here is: What was its route? As a rule its vessels coming in from the ocean went no farther than Seattle. At times, if the quantity of freight were sufficient to justify it and sufficient time were available, they would go as far as Tacoma. Goods destined to Olympia were either transferred to another carrier at Seattle, to be taken to Tacoma, or they were taken directly to Tacoma. In either case they were there transferred to another carrier for transportation to Olympia.

The appellee, in ordering the shipment of the goods from Los Angeles, directed that they be sent by steamer. It designated no particular steamer or steamship line. Said the appellee's agent: "We wanted them to come by the first ship that left port." The appellee knew that the appellant never sent its ships to Olympia. It was chargeable with knowledge that the Farragut in the usual course of business might at Seattle transfer the goods to another carrier. Clearly we think the Farragut had the right thus to transfer the goods. The appellant was an intermediate carrier. The transportation was neither to commence nor to end with it. It was not the initial carrier, and therefore neither by the common law nor by the Cummins Amendment was it answerable to the appellee for the loss. It made no contract with the appellee

which obligated it to answer for the safe carriage of the goods over other lines. 10 C. J. 519; Oregon-Washington R. & Nav. Co. v. McGinn, 258 U. S. ——, 42 Sup. Ct. 332, 66 L. Ed. ——.

The appellee points to the fact that by the terms of the bill of lading the goods were consigned to the Pacific Steamship Company, and contends that thereby the appellant was made the initial carrier. The bill of lading thus issued by the Southern Pacific Company, in which the Pacific Steamship Company was named as consignee meant no more than to indicate the route by which the goods were to go to their final destination, which as later expressed in the bill of lading was Olympia, Wash. The same bill of lading, so issued by the Southern Pacific Company, was finally delivered to the appellee at Olympia, and it was the only bill of lading. It covered the shipment from Los Angeles to Olympia, and it contained all the essentials of a through bill of lading. The Southern Pacific Company was authorized by the bill of lading to select a line of steamships to receive the shipment at Wilmington, and the words "Consigned to Pac. S. S. Co." but expressed the selection of a carrier thus to receive the goods on their way to final destination.

The appellee refers to the waybill as affording evidence of their contention. The waybill is marked "from Wilmington to Tacoma, Washington." It was shown that the custom of the appellant as to freight whose final destination was Olympia was to manifest it Tacoma. If the ship came to Tacoma, it was properly manifested. If the voyage terminated at Seattle, the freight was transshipped to the Merchants' Transportation Company for Tacoma. In short, if the manifest showed the destination to be Tacoma, it meant the freight should be discharged there only if the vessel went to Tacoma. The waybill was but a memorandum of the appellant's records, and was no part of the contract of affreightment.

The decree is reversed, and the cause is remanded, with instruction to dismiss the libel.